## Case No. 12,508.

### The SCIOTO.

[2 Ware (Dav. 359) 360; [1] 5 N. Y. Leg. Obs. 442; 11 Law Rep. 16.]

District Court, D. Maine. Dec., 1847.

COLLISION—VESSEL AT ANCHOR—PRESUMPTION OF FAULT—ENTERING HARBOR—LOOKOUT—LIGHTS—DIVIDED DAMAGES.

1. When a collision takes place between a vessel under sail and one at anchor, the prima facie presumption, if there be any fault, is that it is on the vessel under sail.

[Cited in Saunders v. The Hanover, Case No. 12,374.]

2. A vessel entering a harbor is bound to keep the most vigilant watch to avoid collision with other vessels in motion or lying at anchor; and if in the night time she ought to have her whole crew on deck on the lookout.

[Cited in Nelson v. The Goliah, Case No. 10,-106; The Lady Franklin, Id. 7,984. Distinguished in The J. W. Everman, Id. 7,-591.]

3. When a collision takes place by the fault of one of the vessels, she is responsible for all the damage.

[Cited in Knowlton v. Sanford, 32 Me. 157.]

4. But if it happens without fault in either party, or if there was fault and it cannot be ascertained which vessel was in fault, or if both were in fault, then the damage and loss are divided between them in equal shares.

[Cited in The Bay State, Case No. 1,148; Lucas v. The Thomas Swann. Id. 8,588; The J. W. Everman, Id. 7,591; The Atlas, Id. 633.]

5. A vessel ought not to be moored and lie in the channel, or entrance to a port, except in cases of necessity; or, if anchored there from necessity she ought not to remain there longer than the necessity continues. If she does and a collision takes place with a vessel entering the harbor, she will be considered in fault.

[Cited in Amoskeag Manuf'g Co. v. The John Adams, Case No. 338; The Chauncey M. Depew. 59 Fed. 794.]

[Cited in Lambert v. Staten Island R. Co., 70 N. Y. 108.]

6. A vessel lying in the channel of a port, from necessity, is bound in the night time to show a light.

[Cited in Lenox v. Winisimmet Co., Case No. 8,248; Jones v. The Hanover, Id. 7,466.]

[1] [Reported by Edward H. Daveis, Esq.]

7. In cases of collision, a fault of one vessel will not excuse any want of care, diligence, and skill in another, so as to exempt her from sharing the loss and damage.

This was a case of collision occurring in the harbor of Portland, between the Scioto, as she was entering the harbor, and the Falcon lying at anchor.

Haines, Dist. Atty., for libellant.
Mr. Shepley, for respondent.

WARE, District Judge. The Scioto, on the evening of the 15th of December, being on her passage from Calais to Boston, deeply laden with a cargo of lumber, in consequence of the threatening aspect of the weather, put into the harbor of Portland. The wind was from the N. N. E., so that she could not lay her course into the harbor, but was obliged to beat in. Two other vessels were entering at the same time. As they entered, the Scioto put in upon one tack, as the other two did on the other, and each tacking at the same time, they passed each other in the channel After making three or four tacks, the Scioto. in her passage from the eastern to the western side, came in collision with the Falcon lying at anchor about 40 rods north-west of the block-house, on House Island, where she had been lying for a week. This was about one o'clock in the morning. The moon was then just setting, the sky moderately. but not heavily overcast; some of the witnesses say that stars were visible, and others that they were not. During the first part of the night. there were flying clouds sometimes obscuring the moon and sometimes leaving it bright. but in the latter part, the clouds became more dense and heavy. Still it was light enough to see objects at considerable distance which were broad off on the water, unless land lay behind, so that the shade of the vessel was melted into that of the land beyond. It was in such a position that the Falcon lay when seen from a vessel entering the harbor, the high land of the town covering her hull. She lay also in the channel or passage way, not precisely in the track of a vessel entering the harbor with a fair wind. but within the range taken by vessels beating in, and very nearly in the track of a vessel going into Hog Island roads; and she showed no light.

In the case of a collision of vessels by which damage is done, the first rule, a rule dictated by natural justice, is that the vessel. by whose fault the collision took place, shall be answerable for all the damage. The first inquiry, therefore, is, by whose fault this collision was occasioned. It may be assumed as a general rule, that when a collision takes place between a vessel under sail and one not under sail, the prima facie presumption is that the fault is imputable to the vessel that is in motion. It is said in Jacobson's Sea Laws, p. 339, generally and without limitation, that when a vessel in full sail occasions damage to one that has no sail set, she

will ·be held liable for all the damage. The same is also stated as a rule of law by 4 Boul.-P. Dr. Mar. p. 492, tit. 12, § 6, and it is assumed to be law in the case of Strout v. Foster, 1 How. [42 U. S.] 29. Undoubtedly, the rule must admit of exceptions. But the first presumption will place the blame on her, because she has the power of changing her course, and a vessel at anchor is stationary. The vessel under sail must therefore clear herself from the imputation, by showing that every practicable effort was made to avoid the collision. It may be safely stated as another general rule admitting perhaps of no exception, that a vessel entering the harbor in the night time, is put on her utmost vigilance; and this is more especially the case if the port be one much resorted to in bad weather as a harbor of refuge, as that of Portland is. When there is reason to expect that the harbor may be crowded with vessels, and this is always to be anticipated of Portland harbor after a few days of bad or doubtful weather, the highest degree of vigilance may be justly required. The master and crew ought to be on deck, and in such parts of the vessel as to be able to control her motions, and to see any vessel that lies in her track, and which they may be approaching. If this is not done and a collision takes place, there will be great danger that the fault will be placed to her account. Under these general rules of the law, the prima facie presumption of fault, if there was any, will be against the Scioto. She was the moving vessel, and she was entering, on account of the doubtful aspect of the weather, a harbor much frequented by vessels on this coast for the very purposes for which it was sought by her. Consequently, we have a right to demand of her the utmost care and vigilance.

Taking the testimony of the crew, and I have seen no reason for questioning their fairness, I think that there was that degree of vigilance which the case required. The whole of the crew were on deck and stationed in those parts of the vessel where they had the best opportunity of controlling her motions and seeing any object which they might be approaching. But the fact was, that the Falcon was not seen from the Scioto until she was so near that it was impossible to avoid a collision. The master, who was forward, and the mate, at the helm, with one of the hands, saw her at the same moment, and the mate immediately put up the helm to bear away. She was moving in a direction that would have brought her on the Falcon's bow, but the helm changed her motion, so that she struck her quarter. At first, it may appear surprising that the master, mate, and one of the hands should all have seen her at the same moment when she was just under the Scioto's bows, at not more than the distance of thrice the length of the vessel. The testimony explains it. As they were approaching the Falcon, another vessel beating into the harbor was ap-

proaching them, between the Falcon and the Scioto, and entirely concealing her, and she was seen as soon as this vessel had so far passed as to clear her. It may still be asked why the Falcon was not seen before, when they were approaching her, and before the stranger vessel intervened to prevent it. The first answer is, that the Falcon showed no light. If she had suspended a lamp in her rigging, that would undoubtedly have been seen. But as the night was sufficiently clear to see objects at a considerable distance, it is contended that with a good lookout, she might and would have been seen sooner. It is not a satisfactory answer to this point in the case, insisted upon for the libellant, that the Falcon was seen from the Scioto as soon as the Scioto was seen by the watch in the Falcon. I fully agree with the libellant's counsel, that the obligation of a vessel entering a harbor, to keep a vigilant watch, is more stringent than it is on a vessel lying at anchor, for the obvious reason that, being in motion, she is in danger of collision, not only with vessels in motion like herself, but with those at anchor. And besides, the fault of the Falcon, if she was in fault, will not excuse the neglect of any precaution on the part of the Scioto. If by any reasonable degree of watchfulness the Falcon might have been seen, I hold that she ought to have been. A vessel entering a harbor under the circumstances of the Scioto, is responsible de levissima culpa.

Might, then, the Scioto, with a vigilant watch, be supposed to have seen the Falcon, while she was approaching her, before the view was intercepted by the other vessel, which was beating into the harbor at the same time; or was the night so obscure that, with a watch intently on the lookout, she might have escaped their sight? Undoubtedly there was light enough to see a vessel broad off on the water, considerably further than these two vessels were apart before the view was cut off by the intervening vessel. But then the Falcon was within the land, so that in the direction in which she would be seen as she approached in any direction, the land rose behind her, above the line in which her hull would be seen, and then the shade of the vessel would be lost in that of the land; and, in the position in which she lay, she could in fact be discovered by the Scioto, as she approached, at but a short distance. The testimony of the crew is that they were on a sharp lookout; and fault is not ordinarily to be presumed; it must be proved. No vessel can reasonably be presumed wantonly to run into another, and in cases of collision the presumption, until the contrary is proved, is that it was fortuitous. Repertoire de Jurisprudence Abordage; Emerig. Assur. p. 414, c. 12, § 14; Boul.-P. Dr. Mar. p. 494, tit. 12, c. 6. Though there is some discrepancy in the testimony as to the obscurity of the night, without supposing it absolutely impossible to have seen the Falcon sooner, I do not feel authorized to

say that the Scioto must be in fault for not doing it, or that there was a want of due vigilance on her part. Some light might have been thrown on this obscure part of the case, if the crews of the other two vessels, which were passing the Falcon at the same time, had been called as witnesses. We should then have known at what time she was seen by them. But they have not been called by either party.

The next question is, whether a fault is imputable to the Falcon, or whether the collision must be considered as a simple misfortune, without fault on either side. When the collision is purely fortuitous and preceded by no fault of either party, the common law as well as that of Rome, following the principles of the law of nature, left the damage and loss to rest where they fell, on the principle that no one was responsible for fortuitous events or accidents of major force. 3 Kent, Comm. 231; Abb. Shipp. p. 1, pt. 3, c. 1; Am. Ed. 1846, p. 301; Dig. 9, 2, 29, §§ 2, 4. And under the term "fault" are included, not only acts of positive misconduct, but every want of due care, vigilance, or skill on the part of the master and crew. "Imperitia culpæ annumeratur." Dig. 50, 17, 133. But the maritime law, from considerations of public policy, divides the loss equally between them. The whole damage done to both vessels is put into one mass in common, and each pays one half, without regard to the different value of the vessels, when both parties have been in fault, without attempting to discriminate whether the faults had not been greater on one side than the other. Hay v. Le Neve, 2 Shaw, App. 395, cited Abb. Shipp. 230. If, says Valin, it should be objected that it would be more simple to leave each vessel to bear the damage which she has suffered, the answer is, that then the masters of large vessels would have little fear of striking vessels smaller and of less strength. Nothing, then, is more just than a contribution by moieties. Ord. de la Mar. liv. 3, tit. 7, art. 10; 2 Valin, p. 179; Abb. Shipp. p. 301, 3 Kent, Comm. 231. And this rule in the admiralty seems to prevail in three cases, first, when there has been no fault, on either side; second, when there may have been fault, but it is uncertain on which side it lies; and third, when there has been fault on both sides. Story, Bailm. §§ 608a–608d, 609, and notes.

It is contended on the part of the respondent, that two faults are imputable to the Falcon: First, that she anchored in the channel and thus obstructed the common passage way of vessels entering and leaving the port; the second, that she showed no light. The Falcon arrived on Thursday the 7th of December, just one week before this misfortune happened, and came to anchor in the place where she then lay. She was bound to Boston, and came in on account of the weather. On the very evening of her arrival, another vessel, the Medford, in entering the harbor came in collision with her. That has been the subject of examination in this court, and damages were awarded against the Medford. The Falcon then showed a light, but a question was then raised, whether she was excusable for placing herself in that part of the channel. The facts proved were, that the Falcon came into the harbor as a port of safety on account of the state of the weather, that the captain was unacquainted with the harbor, and that he brought his vessel to anchor in a place where vessels often anchor and lay for a short time. The Medford was entering with a fair wind and could easily lay her course directly into the harbor. My opinion then was, and I have seen no cause for changing it, that the collision happened from want of due care on the part of the Medford, without fault on that of the Falcon.[2] But the facts now before the court present a widely different case. The Falcon lay a little out of the track of a vessel entering the harbor as her home port with a fair wind, but precisely, as it was expressed by one of the witnesses, in the gangway leading to Hog Island roads, and that is the place aimed at by many, if not by most vessels which come into the harbor for safety from stress of weather. All the experienced shipmasters without exception, who have been examined, say that it was not a fit place for a vessel to anchor unless in a case of necessity, but that it was a place of danger both to herself and other vessels that were entering the harbor; and that no vessel anchoring there from necessity, ought to remain in so exposed a situation longer than the necessity continued. Now, the master had been very strongly admonished by one collision that he lay in an unsafe place, yet he remained there for a week after, without attempting to change his place. Admitting that the master of the Falcon, being little acquainted with the harbor, is excusable for bringing his vessel to anchor in that place when he first entered the harbor, is he excusable for remaining there after he had the most convincing proof that he was in a place that exposed him to collision with other vessels entering the harbor? It is contended by his counsel that he was, first, because the subject of the first collision was then under judicial examination, and he might naturally suppose that he would be chargeable with some impropriety if he removed while that matter was pending; and secondly, that there being no harbor-master or port regulations directing where vessels may lie, every master has a perfect right to choose his own place of anchorage, and that he has as much right to one part of the harbor as another. I can see no sufficient reason for his not removing his vessel from the channel where she was in constant danger of collision with vessels entering the port, from the fact that the process for the first collision was still pending and undecided. He might easily, by calling witnesses, have determined her exact position, or at least nearly enough for the purposes of that case. And

---

[2] The case of the Medford is not reported, an oral opinion only having been given.

though, in the absence of any harbor regulation, every master may choose his own place of anchorage, he makes the choice on his own responsibility. It does not follow, because there are no special laws or regulations for the port and harbor, that they are left without law. The general law of the sea then governs. In all situations men are bound by the common obligation of social duty, so to use their own right as not to injure others. "Sic utere tuo ut alienum non lædas," is a principle of the law as well as morals. The law of the state does not, it is true, attempt to enforce by penalties all the obligations of high and strict morality; but this is one in which, in a great variety of circumstances, it does come in aid of social duty and Christian charity. It requires men to care for others as well as themselves, and so to exercise their own unquestioned right, as not to violate or infringe the equal rights and endanger the security of others. Admit that in a case of urgent necessity, a master has a right to bring his ship to anchor in the very middle of the channel. Others have a right to that channel as a passage way as well as he. He could not remain there longer than his necessities required, without encroaching on the rights which others have to the free use of the channel, in passing in and out, without dangerous obstruction. He is bound, as soon as he is able, to remove his vessel to a place where she may be safe herself and not endanger the safety of others. It is an old rule of the maritime law, that a vessel improperly moored, or in an improper place, can claim nothing for damages she may suffer from collision with another vessel. Ord. de la Mar. liv. 3, tit. 7, art. 11, and Id. liv. 4, tit. 8, art. 3; 2 Valin, pp. 183–579; 1 Emerig. Assur. p. 412, c. 12, § 14. Laws of Oleron, art. 15. Notwithstanding the injury which this vessel had received in the former collision. I am entirely satisfied that she might have been moored with ease, and with perfect safety, where she would have been out of the way of vessels beating into the harbor, and, in my opinion, she was in fault in not doing it. All the witnesses agree on the point, which indeed seems too plain to require proof, that a vessel ought not to lie, day after day, in that part of the channel which is in the range vessels take in beating into the harbor.

Another fault is imputed to the Falcon, that of not showing a light. If she had shown one, it seems to me nearly certain that she would have been seen from the Scioto in approaching her, in season to have avoided the collision. If she had had a light suspended in a conspicuous place, and a collision had taken place, it would, to say the least, have been extremely difficult for the colliding vessel to have excused herself. For, admitting that she was anchored in an improper place, her fault would not excuse any want of care and caution in another vessel. But here it is again said, that there are no port regulations requiring vessels to show a light, and that in point of fact it is not customary for vessels to do so in this port.

It is true that the testimony is, that though vessels lying in the harbor sometimes show a light, they usually do not. But whatever may be the custom, it appears to me hardly to admit a question, that a vessel lying in a channel, at the entrance of a harbor, where vessels are often passing and repassing, ought in the night time in common prudence to show a light. When she lies out of the channel way where vessels pass, it may not perhaps be required; but if she places herself in the common passage way, though she may have a right to lay there in a case of necessity, certainly it is not demanding too much to require her, while she is occupying the common highway, to give notice, by a light, of her position to others who are passing, and who are entitled of common right to a free and unobstructed passage. If she does not, it appears to me that no court could hold her free from fault. In some parts of this country this is said to be required by port regulations. And I apprehend that it is required by the law of the sea. In the case of Hay v. Le Neve, cited in Abb. Shipp. 230, which arose and was much litigated in Scotland and was ultimately decided on appeal by the house of lords, the Wells was lying at anchor in the Frith of Forth, and, in a cloudy night, was run down by the Sprightly and entirely lost. The house decided that both vessels were in fault, and following the rule of the maritime laws divided the loss between them, each bearing one-half. Lord Gifford, in delivering his opinion to the house, said he was strongly impressed with the negligence on the part of the Wells in not showing a light, and it would seem from the report of the case in Abbott that this was the only fault imputable to her. In Jacobson's Sea Laws, 340, it is said that the want of a lantern, in narrow waters, has always been looked on as an omission and neglect not entitling a party to redress when injured. And it is added, that it was so decided by the supreme court of Holland on the advice of Bynkershoek, and there is no higher authority in maritime law than this great civilian. The Ordonnance of the Marine, liv. 4, tit. 3, art. 4, directs that "when there are several vessels lying in the same road, that which shall be most outward to the water shall have, during the night, a light in the ship's lantern to warn vessels coming from the sea." "An extremely wise precaution," says Valin, "but too much neglected; but if not observed, the vessel receiving damage would not be entitled to an indemnity for it."

On these authorities, as well as the obvious reason of the thing, I feel justified in stating that a vessel lying in the channel of this port (and by the channel I mean that part of the water which is traversed by vessels coming into the harbor, whether they can lay their course in, or are under the necessity of beating in) is bound to show a light in the night time, whether the night is obscured by clouds, or it is star-light, provided there be no moon. It is required in my opinion by the general law of the sea, independent of all port regula-

tions. On both grounds my opinion is, that the Falcon was in fault and is not entitled to recover against the Scioto. But under the circumstances of the case, it being the first case of collision in this port which has been brought to the consideration of the court .(except the recent instance of the Medford) the libel is dismissed without costs.